So our next case is Yaw v. Delaware River Basin Commission. Let everybody get settled. Good morning, Counsel. Good morning, Your Honor. May it please the Court, my name is Shohin Vance. Before I begin, I'd like to reserve three minutes for rebuttal. Sure. I represent the appellants in this matter. Fundamentally, this is an Article III standing case, which has and implicates the three basic requirements of standing, injury, traceability, and regressibility. And applying that basis... It's more than just injury, right? It has to be a particular injury. An injury that is cognizable, or an injury to a cognizable interest, a legally protected interest, correct, not a minimal injury. But this Court has noted that it's not Mount Everest, essentially, to use the words of the Third Circuit. That it doesn't have to be, you know, at least in the pleading stage, it doesn't have to be pled with a particularity that perhaps you're required to show to succeed on the merits of your claim. But fundamentally, the District Court's error here in dismissing this action for lack of standing was that it displaced the ordinary Article III standing standard with the heightened legislative standing standard that is used in the context of federal legislators. And that... Distinction between state legislators and federal legislators? For purposes of standing, absolutely. And that is because cases involving federal legislators implicate important separation of powers concerns. You represent the group of legislators, if I'm not mistaken. Correct. Correct. I have a note here I'll bring to your attention, that only the entire legislative body can bring suit, not individual legislatures. Could you comment on that? So that was the holding, I assume this is... District Court. What's that? District Court holding. Oh, the District Court's holding. So the District Court held that based on Bethune Hill. Based on? The Supreme Court's decision in Bethune Hill, which in that case, yes, the Court held that only the Virginia General Assembly as a whole could bring suit. Can you tie that to some deference? Well, the distinction, of course, is under Virginia law, individual state legislators do not have a cognizable interest in asserting the... They do under Pennsylvania law? Correct. So reconcile that with the Wolf decision from the Pennsylvania Supreme Court. So the Wolf decision did not hold to the contrary. In fact, having litigated that decision, Wolf v. Scarnati initiated it in the Commonwealth Court. It was brought by Senator Scarnati. In fact, some of the Senate intervenors, the Senate Democratic intervenors, challenged standing in that case. The Supreme Court rejected the standing challenge. What the Court held there was that the power of suspending laws belongs to the General Assembly, which implicates the broader power of legislating, which includes the governor's veto. That was the holding of Wolf. It had nothing to do with whether individual legislators have the ability to bring claims to redress injuries to their legislative powers. In fact, FUMO recognizes that expressly. So then in your worldview, the state legislators, if they don't like what's happening in the state legislature, can go to court and say my authority is being undermined by what my colleagues are doing? No. No, not by what my colleagues are doing. I mean, if... A state legislator can't go to court where they lose a battle in the political arena and then try to fight it in the judicial arena. Well, the Commonwealth of Pennsylvania is the group or the entity that joined the river basin, right? Correct, right. With the approval of the legislature. Correct, with the approval of the legislature. And your clients don't like that. They don't like the restrictions that have been placed upon them, right? That the compact... They want to start fracking. They don't like that, that they've been prevented from fracking, right, at the end of the day? Essentially that the compact has encroached on the legislature's prerogative. Right. The legislature or your client's prerogative? Well, the legislature's prerogative, which can be vindicated by my client. By individual... By individual legislators. So they can undo. The individual legislator can undo the Commonwealth's agreement to join the pact. Absolutely not. Not undo, but can bring a claim to define the contours. Does that mean they disagree with an action of the commission? They can vote to undo it? Not at all. It's to define the contours of what that agreement says. So there's no attempt to undo the compact. The compact says what it says, like any contract. So the compact, in essence, says we're going to preserve the natural resources. Your clients want to start fracking, right? Well, the compact says that the commission has certain powers that are delegated to it. Our clients believe that they have exceeded the delegation of powers given to the commission under the compact. So let's assume that we rule in your favor. Can a different legislator come in and say, oh, no, no, now my rights are being violated? If they are able to, I mean, with regard to the compact or more broadly? I mean, my legislator, he's in favor of protecting the environment. And when the pro-fracking legislators win and the commission starts permitting fracking, then my legislator, who is pro-environment, is going to come in and say my ability to stop this has been injured by the action of the other legislators. And my vote is being affected by the permission to allow fracking. And I'm against fracking. And I want help from the courts. Well, perhaps they wouldn't, that case perhaps wouldn't be dismissed on standing. But I have no, I can't conceive of a way in which that would survive a 12B6 motion for failure to state a claim. Because I don't know what the claim would be there. Legislator A wants to start fracking, right? Legislator B says, no, no fracking because I want to preserve the water. So you have competing interests among two different legislators. Can they both go to court now? Let's assume the court rules in favor of A, says, okay, you can start fracking. Can the B group then come to court and say, well, now my legislative authority has been undermined? But I don't, I can't conceive of how they would state a claim. How would legislator A state, how does your client state a claim? Well, the claim is that there is a state law that has been enacted. And whatever the legislature does will be overridden by the compact. So. Well, the same thing can happen for legislator B. You make the same complaint. But their vote would be simply defeated by the majority. It wouldn't be overridden by the commission. That means it goes to the entire legislature. You say by a majority. The vote has to be presented to the entire legislature, doesn't it? A vote for? For whether we should be able to engage in fracking or not. Correct. But that's not, that goes to the merits. The sole issue here is whether the commission exceeded the bounds of its authority. It will. And legislator B comes in and says the commission didn't live up to its delegated authority by permitting fracking. But I don't think that would implicate their legislative powers. The commission failing to perhaps adhere to the compact wouldn't affect the legislative power. There is no power under the state constitution regarding state legislative power that would be implicated. What you're really looking for is a carve out, right? You're looking for a carve out for your clients. The entire legislature signed on to this pact at some point, right? And now your individual clients don't like what was originally agreed to, right? I mean, that's what's happening here. And you're asking for a carve out to say, well, my clients are entitled to bring this lawsuit in the interest of fracking. Not at all. It's not that we don't like what was agreed to. Well, you don't because you want an exception. You're looking for an exception, right? No, I think we want the commission to follow the terms of the compact. We believe that they have exceeded what the document says they can do. I mean, it's not about an exception or being allowed to. But it's your client's interpretation. It's your individual client's interpretation, not the legislature's interpretation. Well, correct. But I'm not even sure how you would bring a claim on behalf of the legislature as a whole. There's no general assembly as a body that can bring a claim. For example, there's no officer of the general assembly as a whole body. Does that mean that individual legislatures can bring a claim on behalf of the entire legislative body? That's not what you mean, is it? Well, if their legislative power is being diminished, then yes, they could. And I can give you an example of why a per se rule that would prohibit that doesn't work. I mean, to say that only an institution can bring a claim would, for example, allow essentially a majority to decide what types of infringement, no matter how severe on the legislative power, including an abolition, let's say, or just preventing the legislature from being able to come in and vote. Judge Steinman's decision was based, if I'm not mistaken, on lack of standing. Correct. And lack of standing in what respect? Can you elaborate what you understand that to be? So I think his decision was based on Reins versus Byrd and its progeny with regard to legislative standing, the term legislative standing, which holds that... Maybe I could be mistaken, but maybe he was thinking that this type of decision cannot be made by two or three legislatures, especially when it involves something as significant as the environment. Well, to be fair... It should come from the legislature, the legislature itself, the entire body of legislatures of Pennsylvania. To be fair, this actually is the majority of the Senate because the Senate caucus is... That's not what we have in this case. Well, I mean, here the Senate, the Republican caucus is the majority caucus. So it is the majority of at least one chamber of the legislature that is bringing this action. So the Republican caucus includes one independent and 28 Republican senators out of 50. So it is the majority of at least one body or one branch, excuse me, one subset of one branch of the government. But wouldn't the appropriate remedy for the majority take a vote in both houses and say we're withdrawing from the pact? But that would be completely ineffectual because to withdraw from the pact would require the approval of the other three states and Congress. It doesn't matter if that bill or resolution or whatever passed 50 to 0 in the Senate, 203 to 0 in the House and was signed by the governor. It would have no effect. So in your world view, a couple of state legislators can circumvent the entire pact, the fracking resolution? Not circumvent it, but seek an interpretation of it that is consistent with... With what they want to do. Well, and the court can decide whether their view of and their interpretation of the compact is correct or not. In the example of Senator Bee, who wants to protect the environment, can't he then turn around and if the commission should permit fracking, can't he turn around and sue the commission saying you aren't protecting the environment the way you ought to, you are depriving me of my legislative right, having voted to create the Delaware River Commission, and you aren't living up to what we voted for you to do? Isn't that adverse situation cognizable the same way your clients are saying they have standing? But again, they're so... I'm not sure what the claim on the merits would be that would possibly survive a motion to dismiss because there's no injury to their... The claim that your clients are making, that the commission is doing something we don't like, and since we voted for the commission and they are taking actions which we think are not consistent with the commission's authority, we are bringing to the court's attention that the commission ought to live up to what it is permitted or required to do. I see my time is up, but I'd like to answer your question. So the difference is what we're claiming isn't simply that the commission is doing something we don't like, that it is an encroachment on a power that belongs to the legislature. If the commission, for example, simply refuses to act with regard to a certain area or just lets fracking happen, that isn't an encroachment on a legislative power. That's a refusal to exercise a power that maybe those legislators believe the commission has, but they're not in any way encroaching on the legislature's prerogative to act because those disaffected legislators can simply... Isn't it encroaching on the legislature's ability to enact anti-fracking legislation covering the state of Pennsylvania? Not at all, because if we were to succeed, those disaffected legislators can bring a bill to the floor, have it voted on, convince their colleagues, get a majority of the Senate and the House to vote for it, and have the governor sign it into law. That sounds right, but why doesn't that process go first rather than a few legislatures trying to get that fracking done, because that's what they prefer? Well, in a sense, that process has gone first. So the Pennsylvania Act 13 of 2013 was a comprehensive law that permitted fracking throughout the state and provided for certain regulations, so that has already happened. Now, I suppose they could pass another set of legislation more specifically targeted toward the basin regarding fracking within the basin, but that would be futile because as long as the commission maintains that it has the authority to regulate fracking there, then as a matter of simple federal law of the supremacy clause, they have supremacy. So whatever the legislature would do until a court decides whether the commission has exceeded the bounds of its authority, whatever enactment the legislature could pass would have no effect, and the law doesn't require futile acts. It strikes me, I can't wait to hear what the other side has to say, but it does strike me as an entire legislative decision, not a group of senators who prefer or want individual action such as fracking. It seems like it's something that does belong to the entire state legislature, but that's not what's happening here. This is a group of senators, apparently, who are interested in the fracking issue and are acting on their own accord. Well, in fairness, again, there has been a full statutory enactment that permits fracking that was enacted in 2013, so it's not like there hasn't been a legislative declaration that declares the legislature's preference for allowing, within reasonable bounds and with certain regulations, fracking throughout the state. That has already happened. I don't think there should be any need to do so again in a manner that's more targeted towards the basin, but in any event, I see my time is up, but I'm happy to answer any more questions. We'll see you again on rebuttal. Okay, thanks. Good morning. Good morning. May it please the Court, Kenneth Warren representing the Delaware River Basin Commission. I will explain why the district court correctly concluded that appellant state senators lack standing to bring each of the four counts of their amended complaint based on alleged injury to their authority as legislators. My colleagues will address appellant's environmental rights amendment arguments. By enacting the compact, the Pennsylvania legislature committed Pennsylvania to manage the resources of the Delaware River Basin jointly with other basin states and the United States. As an alternative to resolving their interstate disagreements with litigation, the parties established the DRBC to share their sovereign powers and designated the governors of the basin states and a federal representative as the DRBC commissioners, each with one vote. This novel sharing of state sovereignty is an experiment in cooperative federalism. In this case, the governors of the basin states voted unanimously to protect their shared waters by prohibiting high-volume hydraulic fracturing in the basin. Principles of federalism support the district court's ruling that individual legislators lack standing to challenge that decision. What about the argument that legislative standing only applies on the federal level because of separation of powers? Well, the key case, the most recent Supreme Court case looking at legislative standing, was Virginia House of Delegates versus Bethune Hill. And in that case, the Virginia House and the Speaker of the House sought to defend a Virginia statute. And in that case, the Supreme Court relied upon Reins Against Bird, which was the federal case, and held that separation of powers and federalism concerns were the same, essentially, be it a federal conflict of interest case or a separation of powers case among the states. And this court has held the same thing. In Good Against City of Philadelphia, in Russell v. Dijon, this court noted that concerns for separation of powers and the limited role of the judiciary are particularly acute in legislative standing cases. And both of those cases were state cases. So the Supreme Court and this circuit, and indeed all the other circuits, have applied these legislative standing rules from Reins Against Bird across the board. Simply put, individual legislators who may not like the compromises the joint multi-state administration entails do not suffer the concrete and particularized injury that Article III requires. And Judge Restrepo, I believe you mentioned that word particularized, because that's what is lacking here. The amended complaint averts that the appellant senators are injured in their official capacity because DRBC's regulations preempt portions of Pennsylvania's Act 13. But once a bill becomes law, a legislator's interest in seeing that the law is followed is no different from a private citizen's interest in proper government. Preemption of provisions of Act 13 constitute generalized grievances, which the Supreme Court held in the Lexmark case does not present an Article III case or controversy. Indeed, appellant's approach would confer standing on each member of a state legislature whenever existing or future state law is preempted or limited by the Supremacy Clause. There's nothing special about fracking. Their principle is unlimited. In contrast, federal courts consistently hold that a federal law that diminishes legislative authority of all legislators similarly causes an institutional injury, not a personal particularized injury necessary to support an individual legislator's standing. That's why in the Virginia House of Delegates against Bethune-Hill case, the Supreme Court felt that even one of the houses of the Virginia legislature would not have standing. And, of course, the Speaker of the House was also one of the plaintiffs. He didn't have standing either. Go ahead. If I'm not mistaken, you're saying that Mr. Vance is wrong. This is an issue that goes before the entire legislature, not a group of senators. That is correct. What we've learned from the Bethune-Hill case is that even one house of a bicameral legislature can't bring an action. Could it be both? If this was a right particular to the legislature, for example, if it was an election clause voting right, then I think, yes, they could bring an action. But in general, preemption is an action that is brought by the state because it injures the state. And as, you know, this court, not this court, the Supreme Court recently held in the Kentucky abortion case, allowing the attorney general to intervene, the state has an interest in upholding the efficacy of state laws. So I think in general, even the General Assembly wouldn't have that right in a case like this one. But there are some cases in which the General Assembly would have. In a case like this one, is this fracking that we're talking about in the Delaware River? Is that correct? Correct. The jurisdiction of the DRBC is the Delaware River Basin, and our authority is confined to that basin. And the members of the commission are the four basin states and the federal government. And there's no doubt that Pennsylvania has jurisdiction in that regard? Pennsylvania is a member of the commission, and its governor voted in favor of the regulation prohibiting high-volume hydraulic fracturing. And the compact adopted by the Pennsylvania legislature grants the governor that authority. Now, what we have heard is that somehow Pennsylvania is different because Pennsylvania has its own standing requirements. Pennsylvania's standing requirements are prudential. They do not transfer to Article III standing, which is what this court looks at. And I think even Pennsylvania might not grant standing here because what the complaint is, is that a statute that has been enacted by Pennsylvania, in this case the compact, is being misadministered by the executive branch. In other words, the governor in concert with other governors. That is a classic generalized grievance that any citizen suffers, but no citizen would have the right to bring. And I don't believe that if you look carefully at the Pennsylvania cases, they were doing anything more than saying under prudential standing considerations, at times we will allow individual legislators to bring cases under our prudential standards, but not creating new rights, and these are not Article III. Out of curiosity, does the Delaware River Basin Commission, in its enabling documents, have any provision for bringing to the attention of the commission opposition to any action that it's taken? Well, if we go through notice and hearing rulemaking, which is what we did here, and then rules are appealable under normal administrative process by somebody who is aggrieved, the authority here that the commission has exercised, it's mispled in the complaint. The complaint alleges, if you remember back to the WLMG case that we had, that somehow Section 3.8, which is project review, somehow that was misapplied by the commission. Regulations that were adopted, as shown in the attachments to the complaint, were adopted under the DRBC's rulemaking authority. Article V of the compact allows the commission to control future pollution, and we have a 435-page comment and response document in the rulemaking, which explains in great detail why it is that fracking in this basin, given the drinking water that 13 million people rely on, given the other water resource needs that we have, would not be compatible with the goals of the compact. And that regulation could be appealed, could be challenged by somebody who has standing. For example, if a landowner who had a concrete plan to frack believed that somehow it was being harmed by the DRBC's regulation, presumably that landowner could appeal. If the state believed that somehow we had done something wrong, the state would have the ability to appeal. But the bottom line for standing is, who is the right plaintiff? And an individual legislator who has not been singled out in any way, who is treated similarly with all other legislators under our Supreme Court precedent, under this court's precedent, has no authority, has no standing to bring a case. Is it the case, then, that this has to go before the entire legislature? I think at a minimum it has to go in front of the entire legislature because we have a bicameral legislature, and if the legislature is going to take an action, it has to be by both houses of the legislature. But as I mentioned earlier, it would be my view that in this particular case, the right government plaintiff would be the state, not the legislature. We'd be brought by the attorney general. I see. Not the legislature, then. I think not the legislature here. A big difference. Not the legislature here because the legislature has not been injured in any way. There is no particular right that the legislature has. For example, under the election clause, legislatures have particular rights. There's no particular right for the legislature here. So my view would be that the state is the right plaintiff. But either way. How does that work, though? Mr. Vance then has to go not to the state legislature. It has to go to the attorney general? Right. I think Mr. Vance has two. One person. I think he has two options. The first is to go to the attorney general. Well, he has three options. The first is to go to the attorney general. The second is to go to the governor because that's who the legislature and the compact appointed as the representative of the state, and the governor could act in concert with his fellow members. And then let me just leave it. Well, the ultimate right of the legislature is to pass a statute which says that the compact will be altered in some way to limit the authority of the DRBC. And Section 14.20 of the compact gives the legislature that authority, but they agreed that they would exercise it only in concert with the other legislatures who are members of the compact. So those would be the three alternatives that would be available to Mr. Vance. But the fourth alternative would be to find a plaintiff who's actually been Thank you. Thank you. An interesting lesson in civics. Good morning. Good morning. May it please the court, Robert Weigel, on behalf of appellees, the Democratic senator interviewers, and the counties of Bucks and Montgomery. Mr. Warren has explained why the plaintiffs lack standing based on their alleged lawmaking powers. Plaintiffs attempt to recast their standing theory using the environmental rights amendment to the Pennsylvania Constitution, or the ERA, also fails. As with their first theory, plaintiffs have failed to allege an injury in fact. And this is true for at least two fundamental reasons. First, the ERA trustee injury that plaintiffs allege is not concrete or particularized for much the same reasons as Mr. Warren has already explained. And second, and separately, plaintiffs aren't alleging an injury to any interest that is actually created by the ERA. And I'd like to address each of those separately if I may. As to the first reason, none of the appellants have suffered an injury in fact, which is to say an invasion of a concrete, particularized interest. And appellees, or excuse me, I think appellants state their alleged injury on, in among other places, pages 22 to 23 of their reply brief. And they say the injury alleged here is that a non-trustee has claimed decision-making authority over the trust corpus at the exclusion of the Commonwealth's other trustees. On its face, that injury is extremely abstract and vague. And to the extent plaintiffs attempt to give a concrete meaning to decision-making authority over the trust corpus, I think it's clear what they mean. I think Judge Restrepo and others mentioned they mean they would like fracking to be permitted in the Delaware Basin. If they had said, I want to frack in my jurisdiction, would that be specific enough? If the individual legislators had said they would like to frack in their, I don't think so, Your Honor. I don't think it would be particularized in the way that Article 3 requires because they would still be, the injury to them, as opposed to perhaps their constituents who might own private land who, as Mr. Warren said, presumably could assert standing to bring a claim. But the legislator's interest, alleged interest, would still be of lawmaking authority. And as I think Judge Fuentes pointed out, and this is just as true in the ERA trustee context, none of the individual plaintiffs standing alone has the ability, even absent the commission's prohibition, to allow fracking. That's something that would have to be done by, at a minimum, the legislature as a whole. And that's equally true insofar as they rely on their trustee status. That's a big deal, though. I mean, that means that the senators that we're talking about here who are interested in the fracking actually cannot do it. That has to go before the entire state legislature. I think, Your Honor, again, the question for standing, as always, as I understand it, what's the specific injury that's being alleged? And so, yes, insofar as the injury being alleged. The injury is allowing me to do something that I really want to do. Correct. And if it's an individual landowner who, but for the prohibition, would be able to frack, that's a particularized injury, at least presumably. But when we're talking about a more abstract interest in lawmaking authority, that's not particularized to individual legislators. And with respect to the corpus of the trust, as plaintiffs refer to it, the Pennsylvania Supreme Court case law in the ERA is actually quite clear. The corpus of the trust consists of public natural resources, meaning state-owned natural resources. And they run into the same problem of particularization there, right? The individual senators don't have authority to authorize, you know, the sale or fracking or leasing of state-owned lands. So they don't have a particularized interest that's being infringed. Now, there are some municipality plaintiffs here. And perhaps if they could allege we own, municipalities own, land that, but for the prohibition, we would be fracking or permitting fracking upon, perhaps, again, as landowners, they would be able to assert standing. But there are, quite notably and significantly, no such allegations in the complaint. Judge Diamond gave the plaintiffs an opportunity to amend their complaint to see if they could or would allege such allegations, and they did not. So the municipalities here are not asserting that they, and I think it's an important point to be clear, not asserting we own public land, municipality, that we would allow fracking on but for the prohibition. Is it the case that a group of senators, regardless of political affiliation, a group of senators by themselves cannot authorize fracking, as Mr. Vance has suggested? Whether it's five senators or 10 senators, that cannot be. I think that's absolutely right, Your Honor. I mean, this is a classic question of law-making authority and who holds it, and it's not held by individual senators. It's not held by the Senate as a chamber. Mr. Warren, I think I was referring to the governor, perhaps, if I'm not mistaken. But what is the process? Well, the process, the process What does Mr. Vance have to do in order to get where he wants to be, which is to allow fracking in the Delaware River? Well, I think, Your Honor, he could persuade the commission to change its regulation. He could persuade the Commonwealth of Pennsylvania to engage in concert with the other signatories to the compact, to revise that compact. So there are ways of altering the regulation itself. In either case, you need state approval. I'm sorry, Your Honor? In either case, you need the state of Pennsylvania somehow to approve the fracking in the Delaware River. Correct. Is that accurate? No, you need the commission. Or the commission. Or the commission. That's correct, yes. And I think the court's questions to Mr. Vance, I think, really got to the nub of the issue here, because when the injury or the interest asserted is really an interest to the state's law-making authority as a whole, which, as Mr. Warren pointed out, is implicated any time there's any kind of preempting regulation. Article 3 says you've got to have someone who actually can stand in and represent that interest as a whole. And if plaintiff's theory of standing is endorsed here, then the federal courts are suddenly going to be refereeing disputes within a particular government, not even just within the state, but within a particular organ of the government. Witness my clients, Democratic senators who are coming forth and intervening, precisely because we disagreed with the plaintiffs here as to their claim of what the interest of the state and what the interest of the legislature was. And I think Article 3 in the case law interpreting it stands for the proposition that that's not the proper role of the federal courts. So the recourse of the plaintiffs, I would say, from a litigation standpoint, is to convince someone who can properly represent the interest of the state, the Attorney General being the most obvious example, to bring the suit and claims that they are seeking to assert here. Thank you, Counsel. Thank you, Your Honors. Good morning, Counsel. Good morning. May it please the Court, my name is Casey Manahan, and I represent Appellee's Delaware Riverkeeper Network and Maya K. Van Rossum, the Delaware Riverkeeper. I will explain why appellant's arguments fundamentally misconstrue Pennsylvania's Environmental Rights Amendment, which does not provide a basis for appellant's standing in this case. First, appellant's alleged financial impact to state funds is not an injury to the trust. Second, alleged interference with the trustee's discretion under the ERA, especially without harm to the trust itself, is not a per se injury. Finally, Senate appellants, including Senator Yaw, Senator Baker, and the Senate Republican Caucus, are not stand-alone trustees outside of their legislative roles within the General Assembly. The language of the ERA sets the criteria by which trustees must measure their efforts. The public natural resources are to be conserved and maintained for the benefit of all the people, including future generations, who have the right to clean air, pure water, and to the preservation of the natural, scenic, historic, and aesthetic values of the environment. Are the municipalities trustees? The municipalities are trustees, Your Honor. The ERA trust is fundamentally different from an economic growth model. In contrast, appellant's amended complaint alleged that they may take reasonable steps to increase the value of the trust's assets, that the growth of the Wealth Fund has benefited the trust by increasing the size of its corpus, and that the commission's prohibition reduced the amount of revenue, which in turn injured the trust's corpus. Appellants fundamentally misunderstand the trust by describing it in monetary terms. Appellants even highlighted the economic effect of the COVID-19 pandemic and the resulting budgetary shortfalls, a reminder of why the ERA's value cannot be financial and must be managed with future generations in mind. While proceeds from the sale of public natural resources must remain in the corpus of the trust and can only be used for conservation and maintenance purposes, the Pennsylvania Supreme Court has also made clear that the Commonwealth may not act as a mere proprietor, measuring its gains by the balance sheet profits and appreciation it realizes from natural resource operations. The role of trustee is not a roving source of power untethered from the government's traditional functions. The environmental trust provides a limitation on the authority of Commonwealth entities in the context of decision-making that affects the public natural resources. In the absence of ERA case law, the appellants rely on Pennsylvania's Uniform Trust Act for their argument, but private trust statutes do not automatically govern the constitutional trust. The Pennsylvania Supreme Court recently explained that trustee duties may be further defined by the courts through reference to principles of private trust law, but the duties are apparent in the plain language of the provision itself. Specifically, the court has cautioned that the ERA, unlike virtually any other trust, has a constitutional dimension. The trustee duty to conserve and maintain includes a duty to prevent and remedy the degradation, diminution, or depletion of the public natural resources, and to act with prudence, loyalty, and impartiality. Appellants do not allege that the commission's prohibition interferes with these duties, but rather complain that they no longer have the power to convert the public natural resources to money, an argument better suited to the proprietary view that was abolished by the ERA. Appellants' theory that it must regain control of the public natural resources in the absence of any harm to the trust is unmoored from the actual duties imposed by the ERA. And finally, Senate appellants cannot separate their trustee obligations from their roles in the legislative process. ERA trustee obligations are constitutional constraints on the legislative authority. Neither Senator Yaw nor Senator Baker identify any power or authority that they exercise over the trust, separate and apart from the legislative body to which they belong. Also, reflexive use of the term Commonwealth entity from sovereign immunity case law is not instructive in the ERA context. Even in the context of sovereign immunity, courts have referred specifically to the caucus's role in the legislative process. Imposing trustee duties and liability on every single individual in government who had a part in administering the trust would constitute a substantial shift in separation of powers and result in a level of judicial oversight that the Pennsylvania courts have yet to embrace in the ERA context. Accordingly, none of the Senate appellants are ERA trustees in and of themselves, and they cannot assert an institutional injury that impacts the General Assembly as a whole. So we ask that this honorable court affirm the district court's orders dismissing appellants' claims. What is the correct procedure then that Mr. Vance should follow in order to see if he can get, on behalf of his clients, permission to do the fracking that they want to do? I would echo the comments of Mr. Weigel and Mr. Warren. They would need to go before the, you know, convince their co-legislators and co-member states of the DRVC. They would need to perhaps convince the governor and the attorney general that the compact has preempted their authority, and they need to bring an action on behalf of the Commonwealth. So I would just echo my co-counsel's statement. A lot of work. Correct, Your Honor. Well, maybe you should be. Thank you. So I think at the outset, Your Honor, it's important to clarify a few things. First, this concept that this is some rogue group of legislators who want to do something that has never been permitted before and that the legislature hasn't voted for is inaccurate. The legislature, through Act 13 in 2013, enacted a comprehensive scheme permitting hydraulic fracturing throughout the state. But they knew at that time that the Delaware River Basin Commission existed, right? They knew it existed. They had no idea, though, at that time that the commission would purport to exercise authority that they don't have. And did they object to the Delaware River and Bay Commission? I'm a Delawarean, so I always want to throw the bay in there, too. But did they object before the commission to the institution of the DRC prohibition of fracking? I believe they did, in fact, pass a resolution several years ago objecting to that. I know for a fact the House did, and I believe the Senate did as well. But I don't want to speak definitively on that. But I'm relatively certain that they did. And certainly they made their objections known through various formal communications, too. So they're aware of what the situation is and of the fact, even when they passed the bill for the Commonwealth, that the Delaware River Basin Commission had the legislature's given jurisdiction over what might be done in the Delaware River Basin. Broadly speaking, yes. But the moratorium was not instituted until 2016, three years later. Right. And we understand how that was brought about and how they had the opportunity to object to that. And you're saying that they did object to that through a resolution. So now don't they realize what they've got to do to change the decision of the Delaware River Basin Commission? Rather than having individual legislators, without any specific interest in any fracking project, try to attack the decision that the Delaware River Basin Commission has come to. So there's nothing that they can do as legislators in their legislative capacity. So maybe there's nothing they can do. Well, but that is, I think, where the problem is because there has to be. Now, of course, on the merits, perhaps a court could decide that their legislative power has not been encroached upon. But when there is at least an alleged severe encroachment on the legislative authority of a state to say that they all have standing. Do individual legislators or even the representative of one political party in the legislature come in and make that assertion, which basically affects the whole state, affects the governor, affects the authority that has, by the legislature, been given to the commission? Well, respectfully, it's about 30, slightly less than 30 legislators because the caucus constitutes the majority of the Senate. But if the question is can they unilaterally act in a manner that will affect the entire state, no. But can they bring an action that would define the contours of the commission's power so that the state can then do what it needs to through the legislative process? But has the state shown that it wants to do that? It has through the enactment of Act 13, which was intended to affect the entire state. It has shown through that legislative enactment that was signed into law that they intend to regulate fracking but permit it. But they did that knowing that the Delaware River Basin Commission existed. Now, if they want to go a step further, don't they have to go forward as the state instead of as individual or a particular party in the legislature? Well, even as a state, I don't think they could do anything. I mean, because as long as the commission maintains that it has the power, the only way to reverse that course would be to obtain assent of the other member states. You've got to get buy-in from the other members of the commission, right? To be able to – To modify, right. Right. And that's what they agreed to when they joined the commission. They walked into it with their eyes wide open. Based on what they understood the powers that they were conveying to be, they didn't – The state of Pennsylvania voluntarily joined this compact, right? Right. And it ceded certain powers voluntarily. And so they voluntarily ceded certain powers with an agreement that if they're going to modify the terms of the compact, you've got to get buy-in from everybody else. But just like with any contract, if you haven't ceded those powers, you are entitled to go to court to seek a resolution of what the contract means without having to obtain assent of the other party to change it. If I think somebody is violating the contract, I should have the opportunity to be able to go to court to explain why that contract is being violated as opposed to obtain the consent of the other party to just change it. You have to show the particular injury that is being caused to you. Which I think we absolutely have. And the case law seems to indicate that if you are coming in as a legislator, you are saying this is harm to the legislature. It affects every member of the legislature equally. And therefore, as an individual legislator or as a group of individuals, you do not have standing to come into court and to make that complaint. I don't think that is what the case law precisely says. I think there is a real distinction, as noted in Arizona State Legislature versus Arizona Independent Redistributing Commission, between state and federal cases. And Bethune-Hill is not really on point here because the court in Bethune-Hill found that the injury just generally was not legally cognizable. It wouldn't have mattered if the entire, along the lines of Judge Fuentes' questioning, it wouldn't have mattered if the entire Virginia House of Delegates brought the action. The court would not have found standing because the injury simply wasn't sufficient to confer standing. And Virginia state law also does not permit for individual state legislators to be able to vindicate state legislative powers, unlike Pennsylvania state law. And so that's why it really is inapposite. And Russell did, in fact, counsel is correct, Russell did hold that the same paradigm that applies to federal legislators applies to state legislators. But that predated the Supreme Court's decision in Arizona Redistricting Commission, which expressly distinguished state legislators from federal. And on the basis of separation of powers concerns being absent. And I think that part of that was also apparent in a recent case that was argued in the U.S. Supreme Court, Berger v. NAACP, which was argued just a couple of weeks ago, involving the power of states to designate state legislatures and state legislative actors as parties to act on behalf of the state. So the whole point is you have to look to state law to determine who has or whether an injury exists. We're not asking to transpose state standing law to federal, but to ascertain whether there is a cognizable injury to a protected interest. You are talking about an injury to legislative powers. You aren't talking about an injury to landowner Joe who wants to frack. Correct. This is not, I don't represent. If you're talking about an injury to legislative powers, it seems to me it makes no difference if it's a state legislature or a federal legislature. Well, I think, and I see my time is up, but I think if you read Arizona Independent Redistricting Commission, the Supreme Court says there is a difference. And Reins suggests there is a difference by pointing out that Coleman involves state legislators, and Arizona Independent Redistricting Commission brings that into sharper focus. And our brief cites at least two circuit court decisions, one from the second and another from the seventh, acknowledging the difference between state and federal. And the absence of those federal separation of powers concerns is vital. And there are a number of other prudential concerns that go in here. But even whether you're talking about separation of powers or not, the fact is you're talking about an injury to the interest of the legislators, all of them, in their ability to determine whether land in Pennsylvania can be used for fracking or not. And therefore, it's not a particular legislator who wants to frack on his property. It's the members of the legislature coming in and saying this is an injury to legislative powers. It affects every legislator equally. And for that reason, I can see why the legislative standing rule should apply to state legislators in that situation, as it would apply to federal legislators. Well, so I think if you set aside the separation of powers concerns, and we just focus on your question, the problem there is twofold. So first, I think that just because there are other individuals who also have standing doesn't mean that one or two don't. To use your landowner example, there could be hundreds of landowners who are affected. You don't need to get all 100 of them. And the dichotomy between institutional injury and personal in the context of state legislators acting in their official capacity, I think can be mischievous because it's easy to recharacterize when somebody is bringing an action in their official capacity. It's easy to recharacterize any injury they claim as institutional because they're members of the institution. So by definition, to some extent, the injury harms also the institution. So if you're deprived of the right to vote, for example, perhaps it's more personal than institutional, but still you can characterize it in some sense as institutional. So I think it's easy to conflate those two, and it can be a little bit unclear and, again, mischievous to do that. So unless the Court has any other questions. All right. Thank you. Thank you. Thank all counsel for your arguments and briefing. We'll take this matter under advisement. Have a good day. Interesting issue. Yes.